UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| ARTHUR FLEMMING MOLER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHRISTOPHER STOVALL, et al., ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 6:19-203-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Federal inmate Arthur Moler has filed a *pro se* civil rights complaint alleging various claims against numerous defendants. [R. 1.] Under the Prison Litigation Reform Act ("PLRA"), the Court conducts a preliminary screening of the complaint. *See, e.g.*, 28 U.S.C. § 1915; *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). For the reasons that follow, the Court **DISMISSES** Moler's claims.

**I**

Arthur Moler is a federal inmate presently confined in Forrest City, Arkansas, but previously incarcerated at the United States Penitentiary ("USP")-McCreary in Pine Knot, Kentucky. Proceeding without an attorney, Moler has filed a civil rights complaint pursuant to the doctrine announced in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), stemming from his treatment at USP-McCreary. [R. 1.] Because of Moler's financial status, the Court has allowed him to proceed as a pauper in this case. [R. 7.] The Prison Litigation Reform Act now provides for a preliminary screening of Moler's claims. 28 U.S.C. § 1915; *Hill*, 630 F.3d at 470-71.

Pursuant to 28 U.S.C. § 1915(e)(2), the Court must dismiss any portion of Moler's complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). Because Moler is proceeding without an attorney, the Court evaluates his complaint under a more lenient standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage of the proceedings, the Court accepts Moler's factual allegations as true and liberally construes Moler's legal claims in his favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

## II

Moler's complaint is very difficult to understand. First, the complaint lists twenty-five different individuals, an unnamed "DSCC-Clerk," unknown "SHU Guards," and the United States of America all as defendants, without clearly describing a joint right to relief or a common question of law or fact. *See* Fed. R. Civ. P. 20(a)(2) (describing when defendants may be joined in a single action). Further, the twenty-four page complaint is comprised of the Court's civil rights complaint form plus multiple "attachments," each purportedly explaining a different claim. But these attachments contain numerous overlapping factual allegations and superfluous details, and they fail to clearly explain what each of the named defendants did or failed to do to cause Moler harm. That said, because Moler is afforded latitude as a *pro se* litigant, the Court has tried to identify as many claims as it can so as to evaluate and screen those claims under the PLRA. For the reasons that follow, none of the claims survive the Court's preliminary screening.

### A

First, Moler states he was "retaliated against by the named defendants." [R. 1 at 2.] Moler appears to claim that because he filed grievances, he was transferred first to the Special Housing Unit ("SHU") and then on to a new facility. [*See id.* at 3, 21.] Most of Moler's

retaliation allegations concern Defendant Mabe [*see id.* at 3], but the complaint on the whole does not state facts supporting a reasonable inference that Mabe conspired with other USP-McCreary employees to have Moler transferred because of his history of filing grievances. Thus, as written, the complaint fails to state a plausible retaliation claim. All of the references to retaliation combined still offer insufficient facts "to support a reasonable inference that any of [the] Defendants individually took such an action, much less that he or she did so in response to [Moler's protected activity]." *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019); *see also Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.").

**B**

Next, Moler raises various constitutional allegations as a result of his time in USP-McCreary's SHU. Moler claims that during his time in the SHU (the time period between February 16, 2018, and March 9, 2018), he asked various staff members and prison guards to see both the psychologist and chaplain but to no avail. Moler claims the psychologist and chaplain were never notified of his confinement in the SHU and that he eventually saw the psychologist on February 23, 2018, by chance rather than as a result of his repeated requests. [R. 1 at 12.]

As for Moler's access to the psychologist, inmates do have an Eighth Amendment right to be free from deliberate indifference to serious psychiatric needs. *See Clark-Murphy v. Foreback*, 439 F.3d 280, 292 (6th Cir. 2006); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). But to establish an Eighth Amendment violation for deliberate indifference, a prisoner must prove both an objective and subjective component by alleging that a prison official (1) was

3

actually aware of a substantial risk that the plaintiff would suffer serious harm, but nevertheless (2) knowingly disregarded that risk. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Moler has not proven those components here. He claims to have a "diagnosed serious mental illness which has him regarded as mental health level II and clearly diagnosed as such," and he also claims he provided multiple defendants with a "verbal and written request to see the Psychologist." [R. 1 at 12.] But he does not allege the named defendants actually knew of his mental illness, or knew that he was facing a significant risk of serious harm, so as to require treatment from the psychologist beyond what he did receive on February 23.

And as for access to the chaplain, Moler has not adequately alleged a First Amendment violation. "While in prison, inmates retain certain constitutional rights, including the right to exercise their religious beliefs." *Thompson v. Commonwealth of Ky.*, 712 F.2d 1078, 1080 (6th Cir. 1983). However, Moler never claims that he was denied the opportunity to practice his religion or that he incurred punishment for doing so. *See id.* He merely states that certain staff members "failed to notify [the chaplain] of Mr. Moler's presence in the SHU." [R. 1 at 12.] This allegation standing alone does not state a Free Exercise Claim under the First Amendment.

Somewhat relatedly, Moler contends he requested a Bible to use in the SHU but was never provided one. [R. 1 at 16.] Moler makes no reference to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.*, but even supposing Moler intended to bring a RLUIPA claim, the claim would fail. RLUIPA requires a plaintiff to show that his religious exercise was substantially burdened. *Dunlap v. Losey*, 40 F. App'x 41, 43 (6th Cir. 2002). Here, Moler has not alleged that his ability to exercise his religion was substantially burdened by the three-week deprivation of a Bible during his time in the SHU, nor has he pointed to any authority suggesting the temporary deprivation violated his rights under the

Constitution. *See, e.g., Marsh v. Corrections Corp. of America*, 134 F.3d 383 (10th Cir. 1998) (concluding that a plaintiff's allegations that defendants temporarily deprived her of religious items for fifteen days failed to satisfy burden of establishing First Amendment violation). Further, there is no indication that Moler was refused a Bible beyond the temporary time period he was in the SHU. On the limited facts provided in the complaint, the Court cannot find that Moler has stated a viable claim upon which relief may be granted with respect to his request for a Bible.

Moler also makes a variety of additional claims alleging unsanitary conditions of confinement in the SHU, claiming he was placed in a unit with a non-working toilet, spoiled food, and dirty uniforms and linens. [R. 1 at 13.] However, the complaint does not link these allegations with any particular defendant(s), stating only that "staff" would harass him with unsanitary and other inhospitable conditions of confinement. [*See id.*] The Sixth Circuit has repeatedly held that "damage claims against government officials arising from alleged violations of constitutional rights much allege, **with particularity**, facts that demonstrate what **each** defendant did to violate the asserted constitutional right." *Heyne*, 655 F.3d at 564 (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) (emphasis added). While *pro se* pleadings are entitled to some leniency, the requisite level of detail is clearly lacking in Moler's case. *See, e.g., Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (explaining the leniency due to *pro se* plaintiffs still typically requires the satisfaction of "basic pleading standards").

## C

Next, the complaint mentions Officer Perry's use of vulgar language towards Moler. Unlike the conditions of confinement claims above, this claim is properly linked to a particular defendant. [*See* R. 1 at 14.]. But even so, the claim itself does not state a violation of Moler's

constitutional rights. The Sixth Circuit has repeatedly found that degrading language by a prison official, though unprofessional and despicable, does not amount to a constitutional violation. *See, e.g., Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim.").

**D**

Moler also makes multiple references to the loss of his property, suggesting his legal paperwork was intentionally mishandled. [R. 1 at 15.] But as for such a property loss claim, this *Bivens* action provides Moler with no relief. To the extent Moler suggests the defendants negligently lost his property, "the negligent deprivation of property by a state or federal employee can never constitute a deprivation of due process." *McNeair v. Snyder*, 7 App'x 317, 319 (6th Cir. 2001) (citing *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986)). And Moler's allegations that the defendants intentionally deprived him of his property "does not constitute a due process violation if a meaningful post-deprivation remedy for the loss is available." *Id.* Moler is a federal prisoner asserting that federal employees intentionally withheld or destroyed his property; thus, his post-deprivation remedy lies with the Federal Tort Claims Act ("FTCA"). *Id.*; *see also* 28 U.S.C. §§ 1346(b), 2674. In the present case, Moler has provided no information regarding an FTCA claim, nor has he demonstrated that the FTCA was an inadequate remedy for him. Accordingly, no *Bivens* relief for his alleged property loss is available.

**E**

The complaint next refers to the "defendant's failure to properly train and supervise medical and mental health staff." [R. 1 at 20.] However, it is unclear which defendant(s) Moler wishes to sue with respect to this claim. The complaint at times suggests that Defendants Gomez

6

and Mabe failed to properly train and supervise others [*see id.* at 19], but later suggests that Gomez and Mabe themselves were the ones who were properly trained and/or supervised by others. [*Id.* at 20.] The Court cannot properly address claims that fail to comply with the basic pleading standards of Rule 8. As noted, the leniency due to pro se pleadings does have limits, and a basic articulation of the names, dates, and actions involved with a particular legal allegation is required even in a *pro se* case. *See Martin*, 391 F.3d at 714; *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## F

Finally, Moler suggests his due process rights were violated because his management variable, or custody classification, was changed. [R. 1 at 20-23.] "A property right or liberty interest must be implicated in order to state a claim for a denial of procedural due process," *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003). Here, Moler has not articulated such an interest, as "a prisoner has no right to a particular security level . . . or placement in a particular prison." *Johnson v. CCA-Northeast Ohio Corr. Ctr. Warden*, 21 F. App'x 330, 332-33 (6th Cir. 2001). For this reason, in addition to Moler's repeated failure to clearly link any particular defendant with his allegations, Moler's due process claims regarding his management variable are dismissed.

## III

For the foregoing reasons, the Court can ascertain no allegations in Moler's complaint that adequately state a claim upon which relief may be granted. Accordingly, all claims are properly dismissed under the PLRA. *See* 28 U.S.C. § 1915(e)(2)(B). Being otherwise sufficiently advised, the Court hereby **ORDERS** as follows:

1. Moler's complaint [R. 1] is **DISMISSED**;

2. This action is **STRICKEN** from the Court's active docket; and

3. Judgment shall be entered contemporaneously herewith.

This the 2d day of December, 2019.

Gregory F. Van Tatenhove
United States District Judge